Dear Mr. Belfour:
You advise that the City of Sulphur has paid its firefighters a 2% "longevity pay increase", along with an additional 3% across the board salary increase, both paid on a yearly basis. The 2% longevity pay increase is paid after a firefighter has three years of continuous service, as required by R.S. 33:1992(B), stating:
 B. From and after the first day of August, 1962, each member of the fire department who has had three years continuous service shall receive an increase in salary of two percent and shall thereafter receive an increase in salary of two percent for each year of additional service up to and including twenty years. Both the base pay and accrued longevity shall be used in computing such longevity pay.
A number of firefighters have resigned from employment by the City of Sulphur, and have later returned to employment by the City. Until recently, the City has required those rehired firefighters to serve an additional three continuous years of service for eligibility for the 2% longevity pay increases under R.S. 33:1992(B).
However, the City of Sulphur has been advised that this practice contravenes the holding of the court in Breaux vs. City of Lake Charles, 338 So.2d. 1205 (La. App 3rd Cir. 1976). The court in Breaux concluded that a firefighter who has completed an initial period of three years continuous service, who resigns his position with the fire department and thereafter returns to his employment with the same fire department, is eligible to receive the 2% longevity pay increase from the time of his return, notwithstanding the break in service. *Page 2 
The City of Sulphur acknowledges that the firemen in question (who already had three continuous years of service) should have been paid the 2% longevity pay increase from the time of their return. However, the City notes that these firemen received a 3% city-wide pay increase during the years in which the firemen were eligible for, but did not receive, a 2% longevity pay increase. You inquire as to the effect of the 3% pay increase, if any, on the 2% longevity pay increase required by statute.
The case of Turner vs. City of Shreveport, 437 So.2d 961 (La.App. 2nd
Cir. 1983) addresses your inquiry. In Turner, the city of Shreveport had given pay raises to members of the Shreveport Fire Department for over a period of twenty years; these raises ranged from 2% to 27.7%. The city had not designated these raises as "longevity pay." The court rejected the argument of the firefighters that in order to comply with the statute the municipality must expressly designate the 2% (and more) salary increase as a "longevity pay raise", stating:
 There is no reason to believe that the legislature intended, by simply adding one sentence to the "additional salary" clause of Section 1992 and by expressly describing the mandated minimum 2% salary increase as "longevity pay" to so drastically alter the statutory scheme as to require an annual longevity pay increase over and above any other pay increase.
 In summary, we conclude that Section 1992 in its entirety continues to require certain municipalities to pay firefighters stipulated minimum salaries, which must include longevity increases after three years continuous service. However, our discernment of legislative intent in conjunction with a commonsense approach to the issue dictate the conclusion that, if this mandated increase is paid, regardless of whether described expressly as a "longevity pay increase" or not, the municipality has complied with Section 1992. Turner, supra, at page 965 (Emphasis added).
The facts of Turner are similar to the facts here under review. As inTurner, the City of Sulphur is considered to have complied with the terms of R.S. 33:1992 at the time the municipality gave the 3% pay raise to the firemen.
We note that the City of Sulphur may not apply the excess of discretionary pay raises given the firemen against balances owed the firemen for longevity pay. In the case of New Orleans Firefighters Local632 vs. City of New Orleans. 876 So. 2d 211 (La.App. 4th Cir. 2004) a similar issue was addressed. The City of New Orleans was allowed a credit for the 2% discretionary raise (given city-wide) against the 2% longevity pay raise owed (but not paid) its firefighters. The court rejected the City's argument that the city-wide discretionary raises in excess of 2% be credited to those years in which the longevity pay increases of 2% were *Page 3 
not given. The court stated "the fact that the City chose to give raises in excess of those required by law should not, and did not, prejudice the firefighters." New Orleans Firefighters, at page 225.
To summarize the obligations of the City of Sulphur to its returning firefighters, if neither a "longevity pay increase" nor a "discretionary pay increase" was given the firefighters, the City owes a yearly 2% longevity pay increase. In a year in which longevity pay was owed but not given the firemen, any city-wide pay increase which was given the firemen is applied against the longevity pay required by statute, up to 2%. The excess of any city-wide pay increase is not to be credited against the balance of longevity pay which the city owes to the firemen, as such would be to the prejudice of the firemen. See New OrleansFirefighters, supra.
You further advise that the City of Sulphur has elected to treat police officers and other City employees in a similar fashion. These employees are given a 2% "longevity pay raise" after three years of continuous service. These employees are also given an across-the-board 3% pay raise.
The City of Sulphur has required rehired employees (all nonfirefighter personnel who had already completed an initial period of three years continuous service) to again complete three years of continuous service in order to be eligible to receive a longevity pay increase. Because the City has recognized it should have paid its returning firemen from the time of reemployment, the City asks if nonfirefighter personnel are likewise entitled to receive a longevity pay increase from the time of reemployment.
While the City of Sulphur is statutorily required to give its firemen a longevity pay increase, the City is not statutorily required to give other city personnel a longevity pay increase. This office has consistently concluded that retroactive pay increases for services previously rendered is a violation of LSA-Const. Article VII, Section 14 (La. 1974);[1] see Attorney General Opinions 79-1352, 80-806, 80-1095, 81-1044, 85-908, 86-88, 86-639, 88-344, 89-190 and 91-383.
Any salary adjustment should have prospective application only. See also, McElveen v. Callahan, 309 So.2d 379 (La.App. 3rd Cir. 1975), writdenied, 313 So.2d 602 (La. 1975), wherein the court stated "[p]ayments to be legal must in *Page 4 
the form of salary increases for the future, not extra compensation for past services rendered." McElveen, at page 381.
As noted above, Art. VII, Sec. 14 prohibits the donation of public funds. The Louisiana Supreme Court has recently announced a new standard for determining whether Art. VII, Sec. 14 is violated. In Board ofDirectors of the Industrial Development Board of the City of Gonzales.Louisiana, Inc. v. All Taxpayers, Property Owners, Citizens of the Cityof Gonzales, 938 So.2d 11, 23, 2005-2298 (La. 9/6/06) (the "Cabela's" case) the Court found that "(Art VII) § 14(A) is violated when public funds or property are gratuitously alienated."
It is the opinion of our office that in order for an expenditure or transfer of public funds or property to comply with Art. VII, Sec. 14(A), the public entity must show:
 1. A public purpose for the expenditure or transfer;
 2. That the expenditure or transfer, taken as a whole, does not appear to be gratuitous; and
 3. Evidence demonstrating that the public entity has a reasonable expectation of receiving a benefit or value at least equivalent to the amount expended or transferred.
See Attorney General Opinions 07-0280 and 07-0134.
The City of Sulphur has no statutory mandate to give 2% longevity pay raises to police and other city employees, as it does with respect to firefighters. A retroactive payment of a 2% longevity pay raise to rehired city employees, without statutory authorization, is extra compensation for past services rendered and is gratuitous under the "Cabela's" case. Such payment would constitute a prohibited donation of public funds.
We hope the foregoing is helpful to you. Should you have other questions in which we may provide assistance, please contact this office.
 Very truly yours,
 JAMES D. "BUDDY" CALDWELL
 BY:__________________________
 KERRY L. KILPATRICK ASSISTANT ATTORNEY GENERAL
 KLK:arg
[1] Article VII, Section 14(a) of the Louisiana Constitution of 1974 states:
 Except as otherwise provided by this constitution, the funds, credit, property, or things of value of the state or of any political subdivision shall not be loaned, pledged, or donated to or for any person, association, or corporation, public or private. Neither the state nor a political subdivision shall subscribe to or purchase the stock of a corporation or association or for any private enterprise.